Thank you, your honors. May it please the court, Matthew Tassilo Pomerantz, LLP, representing plaintiff's appellants in this consolidated appeal of a securities fraud class action. I wish to please reserve five minutes of my time for rebuttal. This court held in eminence capital that in the quote technical and demanding area of federal securities class actions, the acid test is a motion to dismiss and adherence to rule 15 principles is especially important. That is particularly true in this lawsuit concerning a multi-year class period of public statements before and after the disastrous Aliso Canyon gas leak. Here the district court had only ruled on the pleadings once before it dismissed the lawsuit with prejudice. It dismissed the first amended complainer, FAC, without prejudice for failure to plead two elements of the Exchange Act can be claimed, falsity and scienter. The district court then conceded that the sufficiently pled one of those two, falsity, which showed not only bonafide progress but frankly was more progress than the plaintiffs in eminence capital had shown because the decision on appeal there still had both falsity and scienter inadequately pled. Both pleadings here, the FAC and the SAC, expressly alleged that the long-awaited root cause analysis, which we now know defendants obstructed and delayed, would quote substantially support their claims. Yet the second motion to dismiss order failed to identify which misstatements were pled as false and it dismissed with prejudice on scienter grounds. The district court refused leave to amend further on futility grounds despite a deluge of new relevant information including both interim and final root cause analyses that plaintiffs laid out in first the third amended complaint one and third amended complaint two. Significantly pertinent facts are still developing prompting plaintiffs to file for judicial notice motions today both before the district court and this court. Most recently SoCalGAS judicially admitted in testimony before the CPUC SED proceedings quote the personal involvement of the highest levels of SoCalGAS management and quote the oversight of and response to the gas leak and also judicially admitted that no modeling whatsoever was done for the first of four failed top kill attempts of the gas leak. Did you bring that to the attention of the district court or is this something that is newly raised? I'm sorry, say it again your honor. Is that did you specifically bring that evidence before the district court or is this something you're now asking us to take judicial notice of on appeal? So the run-through of new information that I've laid out kind of in summary much of it was before the district court the root cause analysis etc. Well I'm asking you specifically with regard to the last statement you made which I assume you you referred to an admission on behalf of the company was that before the district court when it ruled or not? No that that that is new information that postdated the district court's order. So why under the normal rules of appellate procedure would we want to take judicial notice of facts that were not in evidence before the district court when it ruled? Judicial notice federal rule of evidence 201 D says the court may take judicial notice at any stage and it may be done in the trial quarter on appeal according to the advisory committee notes but the task. But you want to you want to introduce it as evidence of the as fact when I assume it is hotly contested by the defendants exactly how much involvement their senior officials had in the minutiae of for example the mechanics of well SS 25. Well again the the judicial admission concerns the personal involvement of the highest levels of SoCal gas in the oversight of the gas leak the response. Doesn't that suffer from the same factual deficiency that the district court was concerned about? The district court kept telling you I want to know who what when where why and how and that doesn't answer that question does it? Well it doesn't tell us which senior officials of the company and we've named only two of them. We did see what when where and how the statements but TELABS disclaims the need for both smoking gun evidence of defendant Reed is the CEO of Semper the parent and defendant Areola is the CEO of SoCal gas the subsidiary. If the judicial admission about the highest levels of SoCal gas and executive leadership overseeing the gas leak doesn't concern the CEO of SoCal gas I don't know who it would concern and the chat the task here on a people under eminence capital is just to figure out whether it appears the plaintiffs have a reasonable chance of successfully stating a claim is given another opportunity. I guess the concern I have is that this litigation is taking on aspects of a moving target as far as the district court is concerned. I mean you keep wanting to raise new allegations and you're asking the Ninth Circuit now to reverse the district court on the basis of a factual allegation that was never prevented and I'll have a little bit of trouble I wish to grant your motion for judicial notice under these circumstances. The moving target is a fair concern but blame squarely lies with the defendants here. The CPUC is now among the 330 violations that they are pursuing against Semper and SoCal gas are scores of them related to third-party entity blade that was engaged to do the root cause analysis they provided documents 25,000 pages of documents in March of 2019 to request that had been made back in 2016. That obstruction which directly evidences Sander incidentally that obstruction delayed issuance of the root cause analysis until two months after that production in May of 2019. And was that factual allegation before the district court when it ruled? So we did we put the the data dump was part of a judicial notice motion that was in line with the judicial notice motion of the root cause analysis itself. So it was in front of the district court when it ruled upon the one of the reconsideration motion. Okay. What seems like you know admittedly something like Cyanter or if we have something similar like specific intent people rarely exactly admit things but so circumstantial evidence can be pulled together to show Cyanter or specific intent but you have to somehow link it to something and what I'm having problems with is like you threw the kitchen sink against the wall and but you're not really you're not tying your allegations to specific statements that would that that the Cyanter would relate to. So I just see a whole bunch of stuff thrown against the wall but I can't pull the link together. Well let's let's focus on the on the gas leak allegations are a little more discreet a little easier to highlight. During that period SoCal gas went door to door reassured residents that there was quote no threat to public safety. It does not pose an imminent threat to public health. At the time we know that the and these these allegations by the way are uncontested on appeal. The gas leak was spewing out toxic air pollutants at levels based on the carb issued data. This is data that was available in real time during the gas leak. Our expert calculated the levels of air pollutants that were being released which not only posed a hazard they also triggered reporting obligations. During that time SoCal gas and Semper were saying there's no health risk and defendant Areola himself was was talking his post bill post leak comments were regarding you know apologizing for the bad smell or saying that you know we were doing everything we can as quickly as possible and and we're worried about the odorant you know that the scent of this leak when and that's months into the leak. Counsel where in your third amended complaint do you specify the date on which the company knew this information and what it knew on that date? I've read your 292 pages or whatever it was I didn't see it. So so we have a combination of what they knew and what they should have known they're deliberately reckless in not knowing. So we have they knew as of October in the 20s that they were getting health complaints reported at the rate of 200 a month. Okay and that you the problem I mean with your argument is that it's the same concern Judge Callahan just articulated. You make this general conclusory allegation but then when I ask okay who within the doesn't answer that. It assumes that because of public health entities say the Los Angeles County Department of Health received X number of complaints over a certain period of time that somehow somebody in the in the company knew that. But you don't say who you don't say when and you don't say what they were told by the LA County Department of Health. The complaint does allege that all those health risks were equally reported in real time to the company. It also you know again we so I see my time is up I'll answer this question in reserve if that's all right with the panel. There's deliberate recklessness because they touted engagement of a world-class team of experts. Our expert in uncontested allegations calculated the release of toxic air pollutants at levels that caused the very health complaints that we allege were provided to the company at a clip of hundreds a month during the whole time. And they judicially admit as I pointed out the high the obvious really that the highest levels of SoCal gas were were monitoring the leak and every post leak statement all these press releases have those logo of SEMPRA and SoCal gas on them. They're posted to the corporate website. We allege the core operations doctrine this is the biggest facility within the within the panoply of things the company does and it's a catastrophe of epic proportions the gas leak with billions of dollars in potential liabilities. All right do either of my panel members have a question that they'd like to ask before and okay otherwise you can you can reserve the balance. Thank you. All right we'll hear from the appellee. Pardon me may it please the court Thomas Peterson for the appellee. The issues surrounding the gas leak at Aliso Canyon are in the course of being addressed in the California State Court toward litigation and before the California Public Utilities Commission and administrative proceedings and and and that's where they belong and where they will be resolved and the district judge here quite correctly concluded that there is no federal securities fraud cause of action in this case and in particular what's missing is the requirement of adequate pleading of scienter under what this court is called the daunting standards of the Reform Act and just to make I'm sure the court has this focus in mind but when we're speaking about what the scienter allegations have to show they have to show with respect to extreme recklessness conduct which approaches intent something which is greater than even inexcusable negligence. Okay but this was a big leak. This was a big leak and the November 2015 prospectus makes no mention of the gas leak. Granted the leak was publicly known but did that information available to the public deviate in any material respect from what the company knew at the time? Your honor there's the so the the prospectus we're talking about is a sale of notes it's not stock it's a it's a prospectus which as the district judge said involves information that was widely known with respect to the existence of the leak and and there's no suggestion and that disclosure which the company was providing included a whole series of press of press releases and other information as well as working on an interactive basis with the state regulator the the dogger agency and there's no suggestion the plaintiffs have never been able to allege what it is that that the company should have disclosed and let's keep in mind when we think about that in an omission you not only have to satisfy the scienter requirement with respect to as your honor judge Callahan said a few moments ago you have to show it with respect to specific statements and omissions and link it up to particular individuals but with respect to an omission it has to be information that is so obvious that the actor must have been aware of it that's from this courts the ASM global case and so here's a little fact that bothers me the Simpra CEO made her largest ever sale of stock days before the governor proclaimed the leak a state emergency you point out she just received her largest ever stock award but does the record establish that her 2016 sale was consistent with a prior trading history it does your honor if you look the record has in it earlier sales that misread undertook in in in those sales are a consistent pattern of selling the stock necessary to pay the taxes that she would be expected to pay as a result of the award and if you look at the award of stock it was approximately 140,000 shares and she sold 72,000 shares which do the arithmetic roughly puts you at the highest tax brackets for the Fed at Federal and California returns and under this courts Ron Coney case which sets out the steps you look at with respect to a stock sale or financial interest analysis of that sort the third is that it it's not probative if it's consistent with the long-standing pattern of past sales and also pattern what was their pattern the day the year before it was a consistent pattern of selling an amount of stock which is you know reasonably calibrated to pay the to pay the taxes that she would have been expected to receive now it's true that she received more shares in 2016 than she had in past years but her sales amounts were appropriately calibrated with respect to the taxes that you would expect to owe for the amount that she received and with respect to misread I think it's also important to emphasize there's there's no allegation anywhere in the complaint that links her to any statement she's not she's not attributed as a speaker with respect to any of the statements that are made nor to any of the omissions that are alleged to the case and and and and with respect to the other defendant mr. areola his statements are for the most part they are I think you can all be statements that that he won't take step they're taking steps to try to deal with it and address it in real time and then his statement that he made to the president of the Public Utilities Commission that working with dogger they were working to preserve all of the necessary evidence but given the the urgent situation people were trying to deal with that they couldn't be assured that everything would be protected and that's hardly indicative of cyanide or your leading regulator can we invoke the core your honor can we invoke the core operation theory here given that the Aliso Canyon wells constituted a very large percentage of the revenues for Southern California gas you know you say I know it's a technical issue but on the other hand if you think of other companies I mean I'm sure if there's a potential technical issue with the revenue so can we invoke that here no your honor this is not a suitable case for invoking the core or collectives core operation or collective cyander concept and in answering your question let me start by observing that this court has observed in the Glaser case and then then in the Nvidia case that it's never actually adopted this concept as to which there's some disagreement in the circuits about whether it really applies but you don't have to decide in this case for sure whether you want to adopt it or not because if you look at the facts here we're talking about one of 115 wells at one of several storage facilities of a company which is involved in the distribution of natural gas to be sure but as to that business it has several different components it's not just storing the gas it's acquiring it it's shipping it it's delivering it to customers so so this is not the kind of situation which rises to the level of being at which is so obvious in the in the language of the DSM global case so obvious that it would be absurd to think that an actor would not be aware of it it doesn't factually lend itself to that sort of characterization and I think the illustration of that is if you look at as I suspect you have a judge Posner's decision in the Seventh Circuit in in the telem case on remand where he used as an illustration of what might satisfy the test and a representation that General Motors had sold a million cars when it had sold none we're not talking about anything which is comparable to that kind of a situation I'd like to turn back if I may to to some of the points that were made by my friend on the other side with respect to the the development of the record in this case and let's start with the the the pleadings that were reviewed in this case it is the case actually that the plaintiff had three opportunities to present a complaint and the district court scrutinized those pleadings twice and concluded and concluded that Cienter was not present and it is incorrect for my friend to suggest that in the second go-around the court decided that falsity had been adequately pleaded in fact if you look at the judge's decision there's a footnote in which he makes very clear that he's not to say he wasn't deciding the question of falsity and as we pointed out in our briefing if you don't agree that this case should go out on Cienter you could certainly turn and affirm it for the lack of lack of demonstrating falsity the next thing to keep in mind is with respect to this as judge Tolman observed this this sort of moving target feature of this case let's remember that once the judgment was entered then the ability to make changes in the relevant pleadings becomes something which has to get reviewed under rule 59 and rule 60 and that's how the district judge looked at it at the first go-around an important factor that the plaintiffs don't want to focus on is even with respect to the to the so-called blade report the root cause analysis that that they were trying to offer at that time the district judge recognized that they had the plaintiffs failed to demonstrate that was even new evidence because much of the material that was in that pleading was something that they could have presented sooner so so so that that's an important reason why we shouldn't be going through this serial reopening of proceedings and then at the the next round of reconsideration with respect to the materials that were actually shared with the district judge there the court also went through and concluded that there was nothing within those materials which would suffice to change the conclusion the court reached with respect to cyanter it didn't meet those kind of exacting or as this court put it daunting requirements that are necessary in order to satisfy that that's the after pleading and that that makes an enormous amount of sense when you when you stop and think about what what was in that those materials a root cause analysis is a retrospective effort to try to explain what what might have been what were the possible reasons that led to the the Aliso Canyon leak and and what sort of among other things to report talks about what sort of reforms perhaps ought to be undertaken on the part of the state noting for example that while the plaintiff in this case likes to talk about the absence of a subsurface valve that the state never required them on this sort of a way so so so that kind of analysis a look backward at what what might have been or done differently and what what might have been a cause all of which is still very much in dispute and by no means settled all of that does not lend itself to supporting the kind of rule 59 or rule 60 relief that you have to demonstrate that you have to be satisfied the burdens for for purposes of reopening the complaint in the case with respect to the question about the relative safety the contents of the the gas that was being released my friend doesn't remind you of the fact that there are in the record by way of request for judicial notice in support of the motion of dismiss as to which there was no objection there are there are reports contemporaneous reports from three different public agencies pointing out that there was not perceived to be any serious risk of health or safety risk those were from the California Office of Emergency Services which is the state agency which takes care of emergency situations in the state that was from the report of the California I'm sorry the report of the Los Angeles Department of Public Health which formed the same conclusion and it's also the conclusion that was reached by the South Coast Air Quality Management District which had concluded that the the content of the air in this particular area as a result of the leak was really no different than it would ordinarily be in Southern California and it's a very important fact that I think gets glossed over when we talk about this which is that the this facility is actually not immediately adjacent to residential communities in this Porter Ranch community which is where most of the the plaintiffs are reside in the context of the civil litigation it's a mile away and so again going back to this kind of scienter inquiry how could we have expected or how can we find without some very particularized actual allegations which we will not find present in this case that the company or any individual in the company again individuals are not specified that they had an appreciation of the fact that the consequences of the release of the gas we're going to affect in a certain way people a mile away in circumstances where it's not even at this point by any means agreed or things like the acknowledgement by the Public Health Department that the odorant which has to go into natural gas the mercaptan you know it can have it can have an effect on people but it's but it's not regarded as a long-term effect and so insofar as there were people complaining about the exposure and the gas and the smell and the like I mean that's the same kind of alert and I don't mean to trivialize it by any means buddy but it's that's part of what captain is there to do is to make sure you're aware of it so you can deal with the gas my friend talks about this statement that is in his latest request for judicial notice as to which there's you know really never been briefed because it came in so late in the record and somehow there's a there's a there's in the testimony before the Public Utility Commission that the highest levels of the gas company were aware of enacting and dealing trying to address the crisis there's or the or the the leak rather there is there's no indication of who that is and these kind of generalized statements of general awareness with respect to circumstances I mean this court has repeatedly suggested in cases like blazer and in web that those sort of generalized assertions are insufficient to meet the pleading standards of the of the Reform Act and I see that I've crossed over into my over time let me make sure that my colleagues don't have any additional questions of you gently or judge Tallman do you have any additional questions I don't all right then thank you and we'll go back for a rebuttal from mr. to solo thank you your honors I'd like to just quickly hit a few points that my worthy adversary raised first we only hit rule 59 and rule 60 standards because the company blade in 2019 of materials requested in 2016 that's part of a pattern of obstruction which included the Los Angeles Department of Public Health saying that they were blocked from taking accurate air readings early on they got a watered-down version of what they needed in too late to impact public health second there was the point about defendant read not specifically being a our speakers even of the things that are not specifically attributed quotation marks they are the maker of the statement with the ultimate authority as CEOs respectively of Sempra and SoCal gas most of these post leak statements have the logos of both companies on them and as we've already discussed there's the admission of a high level involvement third judge Callahan asked questions about motive so a couple of points are worth making their first it is categorically untrue that the information that was known ie that there was a leak at all aligned with the reality of the leak known to the defendants for purposes of assessing that prospectus by the point of that prospectus a top kill it failed the crater was widening it was very clear this leak was not stopping anytime soon and charitably put it's it's a pretty clear attempt to raise the funds to start covering the liabilities that were dawning on the company for defendant read the the problem that the district court has and and defendants is that they are taking the three Ron Coney factors and and morphing them into two those factors are amount timing and history the amount is unquestionably suspicious it's the largest ever award given at a time of ongoing catastrophe it's the largest ever sale of 51 percent of the award by the way is sold that I'm unaware of a tax bracket that high for a six million dollar game the timing is suspicious two days before the declaration of emergency council council didn't and she sold stock at that same time of the year the year before that's the third factor that's my point there's an amount factor there's a timing factor just objectively is it suspicious or not being that close to a corrective the answer is yes two days away a three-day delay would have cost her over half a million dollars that's independently suspicious now the third factor is the history okay so I've got two factors already on board the third factors history but to go with them on history you have to believe this this thought that when she sold on January 4th around the time she had sold before she had just no idea that the state of California was about to declare a state of emergency for an ongoing catastrophe that is exceedingly unlikely the inference doesn't even pass muster because in all likelihood the company and the authorities are working closely together we know from this record here's massive governor Brown it toward the site his sister's on the board specifically to facilitate communications it's likely that the company the likely inferences that they got a quick plausible inferences that governor Brown's sister heard from her brother that he was going to issue governor's proclamation of emergency and shipped off misery who then like the inferences that she alerted the company that it's coming so they can get in into place required to comply with the edict once it has well is this company on a on a calendar year fiscal basis so with with options be executed in at the end of the December I apologize I don't know the answer that question right now but but but we do know that she had received stock in early January in prior years and had sold part of it to pay her income tax like correct but this is this was twice the size of the sale and it was in the midst of an ongoing catastrophe two days before that catastrophe was declared an emergency I would look I would close in just saying this you know we did better than eminence capital we moved the needle my adversary sort of disclaimed it but the district court said without deciding the issue the district courts view of the SAC indicates that at least some of the newly pleaded allegations sufficiently established this element in our briefing aligned the concerns that had been articulated in the FAC people not calculating the amount of air pollutants released not tying it to a reporting allegation we align those specifically in our briefing here's what you said here's how we meet it so we've done better than eminence capital here the root cause analysis is hundreds of pages long the supporting documents are thousands of pages of the record it really what they're asking is though we delayed that for three years let's just let this case die without those allegations ever being tested on a 12b6 motion even though the delay is our fault and we can no longer show under the foeman factors prejudice or undue delay because we caused it that's really where we are now this this case deserves to be vetted with all of those allegations in front of the court at 12b6 motion render decision rendered all right thank you both for your argument this case will now stand submitted
judges: Tallman, Callahan, Lee